# 𝔍n the 𝔘nited 𝔖tates 𝔒ourt of 𝔉ederal 𝔒laims

No. 14-622C
(Bid Protest)
(Filed: September 29, 2014)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | |
| * | Pre-award Bid Protest; 28 U.S.C. |
| **GLOBAL MILITARY MARKETING,** * | § 1491(b)(1); Jurisdiction; Standing; |
| **INC.,** * | Federal Acquisition Regulation ("FAR") |
| * | 52.212-1(f); Late Proposal; |
| Plaintiff, * | Supplementation of Administrative |
| * | Record. |
| v. * | |
| * | |
| **THE UNITED STATES,** * | |
| * | |
| Defendant. * | |
| * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | |

George Roderick Mead, II, Moore, Hill and Westmoreland, 220 West Garden Street, Suite 900, Pensacola, FL 32052, for Plaintiff.

Stuart F. Delery, Robert E. Kirschman, Jr., Deborah A. Bynum, and Robert C. Bigler, United States Department of Justice, Civil Division, Commercial Litigation Branch, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

---

**OPINION AND ORDER**

---

**WILLIAMS**, **Judge.**

     In this pre-award bid protest, Plaintiff, Global Military Marketing, Inc. ("Global"), challenges the rejection of its offer as late. This matter comes before the Court on Plaintiff's motion for judgment on the Administrative Record ("AR") and Defendant's motion to dismiss for lack of standing, or, in the alternative, for judgment on the AR.[1]  Plaintiff seeks a declaratory judgment that the agency's refusal to consider its proposal was improper and an injunction directing Defendant to accept its proposal for evaluation or, alternatively, a cancellation and reissuance of the solicitation.

---

[1] The Court also addresses Plaintiff's motion to supplement the AR and the parties' consent motion to substitute exhibit.

Because Plaintiff's offer would have been considered but for its lateness, Plaintiff has standing.  However, Plaintiff has failed to demonstrate that the agency should have accepted its late proposal.  Plaintiff invokes FAR 52.212-1(f)(4), which authorizes acceptance of a late offer where there is an interruption of "normal Government processes" at the Government location where offers are to be delivered.  Here, although Plaintiff established that severe weather disrupted Plaintiff's operations in Pensacola, Florida and caused delays to Federal Express' delivery of its proposal, Plaintiff did not establish any interruption of "normal Government processes" at the location where offers were to be received in Fort Lee, Virginia.  The solicitation expressly warned offerors that delays caused by commercial carriers or "municipal difficulties such as black-outs are not excusable."  Plaintiff's delay falls into this category, not the FAR exception.  As such, the protest is denied.

## **Findings of Fact**[2]

On January 21, 2014, DeCA issued solicitation number HDEC02-13-R-0004, for the supply of fresh pork products.  AR Tab 1 at 1-10.  The offer due date was originally 3:00 p.m. on March 4, 2014. Id. at 1.  Citing FAR 52.212-1, the solicitation instructed that proposals deemed untimely would not be considered and that "[d]elays caused by commercial means such as airlines, express carriers such as Federal Express, United Parcel Service, etc or municipal difficulties such as black-outs, are not excusable."   Id. at 36-37.  Offerors were expressly instructed to "[e]nsure enough time is allowed for the proposal to arrive on time."  Id. at 37.  Over the next few months, DeCA issued several amendments to the solicitation and ultimately extended the deadline for receipt of proposals until April 30, 2014, at 3:00 p.m.  AR Tab 2-7.

Plaintiff tendered its proposal to Federal Express on April 29, 2014. AR Tab 11 at 141.  However, "extreme weather events in Pensacola, Florida" required that the proposal be routed via ground to Mobile, Alabama "before it could be put on a courier airplane . . . ."  Id.  According to a May 5, 2014 letter from a Customer Correspondent at Federal Express, the package was not delivered as expected "due to severe weather conditions at our Mobile, AL ramp facility on the evening of April 29 and the morning of April 30 . . . ." Ex. C to AR Tab 11 at 153. The Federal Express package containing Plaintiff's proposal did not arrive until May 1, 2014.  AR Tab 9 at 138.  Federal Express' Customer Correspondent also testified in a declaration that "[a]s indicated in my letter, the package referenced was not delivered on April 30 as expected due to restricted airport operations in severe weather conditions at our Mobile, Alabama ramp facility on the evening of April 29 and the morning of April 30, resulting in delay."  AR Tab 15 at 200.[3]

According to Plaintiff, this "disastrous weather event" involving "intense rain of over 20 inches in 24 hours, widespread and damaging floods destroyed numerous major roads and bridges in the area" and caused severe **"damage to infrastructure and residential and commercial buildings, and temporary closure of the Pensacola International Airport." AR Tab 11 at 141.  In

---

[2] These findings of fact are derived from the AR and the supplement to the AR.

[3] The Court granted Plaintiff's oral motion to supplement the Administrative Record with the declaration of Federal Express' Customer Correspondent. AR Tab 15.

2

an April 30, 2014 Executive Order, the Governor of Florida declared a state of emergency for certain areas of the state, including the area where Plaintiff's facility is located. Ex. A to AR Tab 11 at 146-150. According to a FEMA news release dated May 2, 2014, President Obama declared a disaster in Alabama. AR Tab 11, Ex. B at 151-152. On April 29, 2014, the National Weather Service put a flash flood watch in effect for Tallahassee, FL and other areas through the evening of April 30, 2014. AR Tab 11, Ex. D at 154-159. The National Weather Service also put a flash flood watch in effect for Mobile, AL and other areas in the early morning of April 29, 2014, through the morning of April 30, 2014. Id. According to the National Weather Service's Weather Forecast Office for Mobile/Pensacola, a "historic rainfall event" developed on April 29, 2014, that produced "widespread flooding," "sinkholes," and "record rainfall amounts" at the Mobile Regional Airport and Pensacola Regional Airport reporting sites. AR Tab 11, Exs. A, B, C, D.

Plaintiff's employees were not able to reach its offices until 1:00 p.m. Eastern Standard Time on April 30, 2014, due to flooded roads. AR Tab 19 at ¶ 5. When the employees realized that the Federal Express package would not be delivered before the deadline, alternate arrangements were made. Plaintiff's normal contingency plan was to send an employee by commercial air flight to hand deliver a backup printed proposal. Id. at ¶ 4. In this case, Plaintiff's employees arranged for a Kinko's in Virginia to print, prepare, and hand-deliver the proposal to DeCA in Fort Lee, Virginia. AR Tab 11 at 141-142. However, the hand-delivered proposal arrived at 3:40 p.m. on April 30, 2014, forty minutes after the deadline. Id. Plaintiff was the only offeror to submit a late proposal. AR Tab 8. DeCA refused to accept Plaintiff's late proposal.

On May 6, 2014, Plaintiff filed an agency protest. In its protest, Plaintiff argued that because extreme weather caused the delay and constituted a force majeure or an act of God, the lateness should be excused as an disruption of normal government processes pursuant to FAR 52.212-1(f)(4) and common law principles. AR Tab 11. The Contracting Officer denied Global's protest on May 28, 2014. AR Tab 13 at 173. Plaintiff filed the instant protest on July 18, 2014. Briefing was completed on September 5, 2014.

## Discussion

### Plaintiff's Motion to Supplement the Administrative Record

Plaintiff asserts that the "delay in delivery of Plaintiff's proposal to DeCA . . . was caused by the FAA's restriction of aircraft ground operations at Mobile and Pensacola due to the flood emergency in the extreme weather," and characterizes this restriction as an interruption of government processes" within the meaning of FAR 52.212-1(f)(4). Pl.'s Mot. for Judgment on the AR at 6. To support its argument that FAA interrupted "normal Government processes," Plaintiff seeks leave to supplement the AR with the following documents:

1. Federal Aviation Administration (FAA) National Policy Order 5200.11, incl. Change 2, effective July 22, 2013.

2. FAA Advisory Circular #AC150/5200-31C, AIRPORT EMERGENCY PLAN effective June 19, 2009.

3. FAA Part 139 Airport Certification List, dated 7/30/2014, by state (excerpt with Alabama and Florida portions showing certificated status of Mobile Regional (MOB), Mobile Downtown (BFM) and Pensacola Gulf Coast Regional (PNS)); http://www.faa.gov/airports/airport_safety/part139_cert/media/part139_cert_status_table.xls. [4]

4. Declaration of Paul F. Stagner, President of Global Military Marketing, Inc. (undated, filed August 8, 2014).

The FAA's Order, Circular and Certification List

Plaintiff requests that the Federal Aviation Administration ("FAA") National Policy Order 5200.11 be added to the record because it defines FAA's role as a service provider with safety oversight. Plaintiff contends that this Order establishes that a "normal Government process" within the meaning of FAR 52.212-1(f)(4) was interrupted by FAA on April 29-30, 2014. Plaintiff seeks to add Federal Aviation Administration ("FAA") Advisory Circular #AC150/5200-31C, AIRPORT EMERGENCY PLAN ("Airport Emergency Plan"), a mandatory plan for FAA-certified airports, that indicates that FAA's Air Traffic Organization and Airport Traffic Control Tower operations are responsible for restricting aircraft operations until appropriate safety inspections have been successfully accomplished. Plaintiff alleges that the Airport Emergency Plan was implemented here and that aircraft in Mobile, Alabama, and Pensacola and Gulf Breeze, Florida were grounded on April 29, 2014, and April 30, 2014. Compl. ¶¶ 11, 13.

Plaintiff argues that FAA Part 139 Airport Certification List, dated July 30, 2014, for Alabama and Florida establishes that Mobile Regional (MOB) airport, Mobile Downtown (BFM) airport and Pensacola Gulf Coast Regional (PNS) airport are certified by the FAA and are subject to FAA decisions to ground aircraft. http://www.faa.gov/airports/airport_safety/part139_cert/media/part139_cert_status_table.xls. Plaintiff seeks to add this list to the record to establish that the three airports affected by the emergency weather conditions at issue are FAA-certified airports and thus bound to follow the Airport Emergency Plan. Id.

Because Plaintiff relies heavily on these documents to argue why its proposal should have been accepted, the documents are necessary to understand Plaintiff's position and to provide effective judicial review. These FAA materials are Government documents readily capable of verification, and there is no prejudice to the Government in the Court considering them. Fed. R. of Evid. 201. As such, the FAA documents are proper supplementation of the Court's record. See Axiom Res. Mgmt. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

---

[4] Because an Airport Certification Status List was inadvertently submitted in an incomplete form, the Court grants the parties' motion to substitute a revised Exhibit at AR Tab 18.

The Stagner Declaration

Plaintiff requests that the declaration of its President, Paul F. Stagner be added to the record to support its contention that normal government processes were interrupted by extreme weather. In this declaration, Mr. Stagner testifies that Global was unable to implement its back-up plan to send an employee by air with a copy of the proposal due to flooding, road closures, and "suspended" aircraft operations at local airports. Stagner Decl. at 1. Mr. Stagner states that Plaintiff's "normal" back-up plan entailed hand carrying a copy of its proposal to DeCA. Id. Mr. Stagner testifies that flooding and road closures surrounding Plaintiff's corporate offices prevented staff from accessing a copy of its proposal until 12:00 noon CDT on April 30, 2014, and that the suspension of aircraft operations in Pensacola, Florida and surrounding airports prevented Plaintiff's employees from timely boarding an aircraft and hand delivering its proposal. Id. Mr. Stagner specifies that printing and binding the extensive proposal locally in Virginia took several hours and resulted in Plaintiff's proposal arriving at DeCA 40 minutes late (3:40 EDT). Id. at 1-2.

Mr. Stagner's declaration provides facts that would not be as ascertainable from the existing record. The circumstances that caused the delay in the delivery of Plaintiff's offer are necessary for effective judicial review so that the Court can determine whether the time specified for receipt of offers should be deemed to have been extended as provided in FAR 52.212-1(f)(4). See Axiom, 564 F.3d at 1381. As such, supplementation of the record with the Stagner declaration is appropriate.

**Defendant's Motion to Dismiss**

### **Standing**

Plaintiff "bears the burden of establishing [the] elements [of standing]" because it invokes this Court's jurisdiction. Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (alterations in original) (quoting Lujan, 504 U.S. at 561). To have standing in a bid protest, a protestor must be an "interested party." Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)). To be an "interested party," a protestor must show: (1) that it is an "actual or prospective bidder" (2) "whose direct economic interest would be affected by the award of the contract." Digitalis Educ. Solutions, Inc. v. United States, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (citing Rex, 448 F.3d at 1307). As the term denotes, an actual bidder is one who submitted a bid for the challenged procurement. Rex, 448 F.3d at 1307. A prospective bidder "must be expecting to submit an offer prior to the closing date of the solicitation." Id. at 1308 (Fed. Cir. 2006) (quoting MCI Telecommunications Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989)).

Defendant contends that Plaintiff lacks standing because it is not an interested party as it submitted its proposal late. Defendant cites MCI Telecommunications Corporation v. United States for the proposition that "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." 878 F.2d at 365. In MCI, the protestor did not participate in the bidding process at all and instead argued that it would be a "prospective bidder

or offeror" in the event of a resolicitation. Id. at 364. The Federal Circuit held that MCI did not have standing because its stated intention to submit a proposal in response to a resolicitation did not make it an interested party as it had not expected to submit an offer prior to the closing date of the original solicitation. Id. Here, in contrast, Plaintiff clearly did expect to submit a proposal prior to the closing date and attempted to do so but was thwarted by weather-caused delays. If Plaintiff succeeds in arguing that the agency erred in rejecting its proposal, it will be eligible for award. As the Court held in Castle-Rose, Inc. v. United States, Plaintiff "unquestionably has standing to challenge [the agency's] elimination of its proposal from the competition for an award" because there are sufficient facts to raise the question of whether the proposal was properly deemed late and**,** but for the determination of lateness would have been eligible for award. 99 Fed. Cl. 517, 523 (2011).

### Improper Defendants

Defendant also moves to dismiss individually sued Defendants, Charles T. Hagel, Joseph H. Jeu, Vicki Archileti, Larry Hahn, and Kimberly Cooper, because they are not proper defendants in this action. It is well settled that this Court only has jurisdiction against the United States of America, not against federal officials or agencies. 28 U.S.C. § 1491(a)(1); Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997). Therefore, the Court dismisses the individual defendants and DeCA.

### Standard of Review for Bid Protests

The Court evaluates bid protests pursuant to the Administrative Procedure Act's standard of review for an agency action. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Therefore, this Court will not disturb an agency's procurement decision unless the Court finds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); Adams & Assocs. v. United States, 741 F.3d 102, 105-06 (Fed. Cir. 2014). Under Rule 52.1, the parties are limited to the AR, and the Court makes findings of fact as if it were conducting a trial on a paper record. See Bannum, 404 F.3d at 1356-1357. Looking to the AR, the Court must determine whether a party has met its burden of proof based on the evidence in the record. Id. The Court may overturn an agency's decision if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing Impresa Construzioni, 238 F.3d at 1332).

### Plaintiff Failed to Establish that DeCA Violated FAR 52.212-1(f)(4)

Plaintiff argues that DeCA violated FAR 52-212.1(f)(4) by failing to consider its proposal because it was delivered late. FAR 52.212-1(f)(4) provides:

> If an emergency or unanticipated event interrupts normal Government processes so that offers cannot be received at the Government office designated for receipt of offers by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation or other notice

6

of an extension of the closing date, the time specified for receipt of offers will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

48 C.F.R. 52.212-1(f)(4) (2012). FAR 52.212-1(f)(4) thus sets out an exception to the general rule that a late offer will not be considered by the Government. See 48 C.F.R. 52.212-1(f)(2)(1); Labatt Food Serv. v. United States, 577 F.3d 1375, 1381 (Fed. Cir. 2009).

Plaintiff contends that the delay in delivery of its proposal "was caused by the FAA's restriction of aircraft ground operations at Mobile and Pensacola due to the flood emergency in the extreme weather." Pl.'s Mot. for Judgment on the AR at 6, 11.[5] Plaintiff's argument that its proposal should not be considered late because there was an interruption of normal Government processes near its offices in Florida or Alabama, where the storm delayed aircraft, is unavailing. The clear language of FAR 52.12-1(f)(4) permits acceptance of late proposals where an "emergency or unanticipated event interrupts normal government processes so that offers cannot be received at the Government office designated for receipt of offers by the exact time specified in the solicitation . . . ." Here, the Government office designated for receipt of offers was in Fort Lee, VA, and normal Government operations were not interrupted in that location.

In a decision affirmed by the Federal Circuit, this Court rejected the interpretation of this FAR clause that Plaintiff is now advancing. Conscoop-Consoriza Fra Coop. Di Prod. E. Lavoro v. United States, 62 Fed. Cl. 219, 221 (2004), aff'd 159 F. App'x. 184 (Fed. Cir. 2005) (per curiam). Conscoop concerned a proposal submitted by email one hour and 41 minutes after the deadline. Id. at 221-224. The solicitation in question, which was only issued online, stated that the deadline was "5 Aug 2003, 1400" and that the hours were stated in local time, which was Italian time. Id. at 221.[6] Conscoop emailed its proposal at 1:58 p.m. Italian time, but it was not received until 3:41 p.m. Italian time. Id. at 223. Conscoop, citing FAR 52.215-1(c)(3)(iv), argued that the power outage at its location was an unanticipated event that delayed the Government's ability to receive the proposal. Id. at 241. However, the Court of Federal Claims was not persuaded and held that normal Government processes must be interrupted at the agency's location, not the bidder's. Id. Because the agency's email system was fully functional throughout August 5, 2003, there was no interruption of normal government processes at the delivery site and no basis to apply the exception. Id. As the Court clarified in Conscoop "the FAR provision focuses upon whether unforeseen events prevent the Government from receiving proposals at the site designated, not on whether unforeseen events prevent the offeror from transmitting its proposal." Id. In a per curiam opinion, the Federal Circuit affirmed and noted that the exception invoked by Conscoop "focus[es] on the government's ability to receive offers." Conscoop, 159 F. App'x. at 186. The Federal Circuit held that "no emergency events

---

[5] Plaintiff's position has evolved somewhat since its agency protest. There, Plaintiff argued that "[s]evere weather conditions were the material cause of the delay in delivery of Global's response to the solicitation" and suggested that these conditions constituted force majeure or an act of God. AR Tab 11 at 141,143.

[6] However, elsewhere on the agency's website, the due date was listed as "05-Aug-2003 1400 hrs (US Time Zones)." Id. at 222.

existed that interrupted the agency's ability to receive offers at the required time and location." Id. Here, as in Conscoop, no emergency or unanticipated event interrupted normal Government processes at the site designated for receiving proposals in Fort Lee, Virginia. As DeCA was open and able to receive offers "at the required time and location," Plaintiff is not entitled to consideration of its proposal under FAR 52.212-1(f)(4). Conscoop, 159 F. App'x. at 186.

Finally, Plaintiff argues in its reply brief that a common law exception to the timeliness rule should apply. Pl.'s Reply at 9-11.[7] In addition to the exceptions set out in the FAR, this Court and the Government Accountability Office have recognized a "common law" exception to the general rule that a late proposal will not be considered by the agency. The Elec. On-Ramp, Inc. v. United States, 104 Fed. Cl. 151, 162 (2012) (internal citations omitted). This "common law" exception provides that a "late proposal may be considered if 'government misdirection or mishandling' was the 'paramount cause' of the delay and consideration of the proposal would not compromise the competitive process." Id. However, there is no evidence that any misdirection or mishandling of Global's proposal on the part of the Government caused the delay. Therefore, the common-law exception to the timeliness rule does not apply.[8]

## Conclusion

Plaintiff's motion to supplement the administrative record is **GRANTED**;

The parties' consent motion to substitute exhibit is **GRANTED;**

Defendant's motion to dismiss is **GRANTED IN PART** in that the Court dismisses the named agency officials and DeCA as defendants;

Defendant's motion to dismiss for lack of standing is **DENIED;**

Plaintiff's motion for judgment on the Administrative Record and motion for injunctive relief is **DENIED**;

---

[7] This Court rejects Defendant's arguments that Plaintiff waived this argument by waiting to raise it until its reply brief.

[8] Plaintiff also argues that DeCA's rejection of its proposal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Plaintiff contends that the Contracting Officer did not properly consider the substance of FAR 52.212-1(f)(4), confused the FAR exceptions, and failed to investigate Plaintiff's claims of an emergency. Pl.'s Mot. for Judgment on the AR at 7-15. These arguments are unpersuasive.

Defendant's motion for judgment on the Administrative Record is **GRANTED,** and the Clerk is directed to enter judgment accordingly.

<u>s/Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**Judge**